UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:08-CR-52 |
| | ) | (PHILLIPS/GUYTON) |
| RICKY VEGA BIAS, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. Defendant Ricky Vega Bias' Motion to Suppress Evidence [Doc. 15] is presently pending before this Court. This matter came before the Court for a hearing on August 29, 2008. Assistant United States Attorney Cynthia Davidson ("AUSA Davidson") was present for the government. Attorney Kim Tollison ("Attorney Tollison") was present representing Defendant Ricky Vega Bias ("Defendant"), who was also present.

Defendant has been indicted [Doc. 1] on one count of previously being convicted in courts of crimes punishable by terms of imprisonment exceeding one year and knowingly possessing a firearm, specifically, a semi-automatic pistol and ammunition, in violation of 18 United States Code Section 922(g)(1). This charge arises out of the seizure of a firearm and ammunition which were found in a car in which the Defendant was a passenger on February 13, 2008.

## I. BACKGROUND

Defendant has moved to suppress all evidence seized from the search of a car in which he was a passenger on February 13, 2008. [Doc. 15]. In support thereof, Defendant states that the officer did not have probable cause or reasonable suspicion to believe that a traffic violation had occurred to justify the stop of the vehicle. [Doc. 16]. Accordingly, Defendant argues that the evidence seized from the car as a result of the search and seizure must be suppressed. In response, the government argues that Defendant's Fourth Amendment rights were not violated, because the traffic stop was lawful. [Doc. 20].

An evidentiary hearing was held on August 29, 2008. The government's witness was Brandon Wardlaw ("Officer Wardlaw") of the Knoxville Police Department. Defendant did not present evidence. Following the testimony, Defendant argued consistent with his brief, asserting that no probable cause existed for the police officer to initiate the stop of the vehicle. The government argued that reasonable suspicion[1] existed for Officer Wardlaw to initiate a stop of the vehicle, based on the driver's failure to signal before turning. In response, AUSA Davidson argued that the government's brief clearly articulated its position.

## II. FACTS

At the evidentiary hearing, Officer Wardlaw testified that on February 13, 2008, the date of the search, he was working patrol at approximately three o'clock p.m. He came into contact with the vehicle in which the Defendant was a passenger ("the Vehicle"). He testified that he drove

---

[1]The Court notes that Defendant argued the higher standard of probable cause whereas the government argued the lower standard, reasonable suspicion, was applicable in this instance.

up behind the Vehicle on Mitchell Street, as it was at a stop sign, at the intersection of Mitchell and Cherry Avenue. (See Exhibit 1 to the hearing). Wardlaw saw the Vehicle, after stopping at the stop sign, turn left on Cherry Street. The Vehicle did not give a turn signal. Before the Vehicle made this turn, it waited on a car going north on Cherry Street to pass in front. Officer Wardlaw was stopped directly behind the Vehicle when this occurred. On cross-examination, Officer Wardlaw was asked whether he had to alter the course of his vehicle due to any of the movements of the Vehicle, and Officer Wardlaw responded in the negative.

Once the Vehicle turned left without signaling an intent to do so, Officer Wardlaw pulled out and followed it. Officer Wardlaw pulled over the Vehicle. He testified that he pulled over the Vehicle, because the driver "failed to use a turn signal when turning in traffic." Wardlaw testified that his cruiser on that day was equipped with in-car video, but that there is no tape recording of the subject stop. He added that he does not know why no tape exists.

Officer Wardlaw testified that there were three gas stations around the intersection of Mitchell Street and Cherry Street, and that there were numerous people at the gas stations. One gas station is a Weigels, the parking lot of which has driveways connecting to Mitchell Street and to Cherry Street. Officer Wardlaw testified that a vehicle pulled out of the Weigels and drove up behind the Vehicle. Officer Wardlaw added that he could not tell for sure if there was a car waiting to turn from any of the parking lots of the businesses around the intersection of Mitchell Street and Cherry Street. Nonetheless, it was his opinion that the Vehicle's failure to use a turn signal may have affected another vehicle.

On cross examination, Officer Wardlaw conceded that he recalled only one car other than the Vehicle:

3

> Q. Officer Wardlaw, now, you said the only car you recall - that you can recall today is the car pulling out of the Weigel's on to Mitchell; is that correct?
>
> A. Yes, sir.
>
> Q. And that is behind where your car was; is that correct?
>
> A. Yes, sir.

Officer Wardlaw also testified that when the Vehicle pulled out on to Cherry Street, there was no other traffic at the intersection of Cherry Street and Mitchell Street. He testified that he did not have to wait for any other cars to pass before he followed the Vehicle out onto Cherry Street.

### III. ANALYSIS

The Fourth Amendment protects citizens against unreasonable searches or seizures. U.S. Const. amend IV. Defendant contends that probable cause did not exist to stop the Vehicle. In response, the government argues that Defendant's Fourth Amendment rights were not violated, because Officer Wardlaw had reasonable suspicion that a traffic violation had occurred.

The Fourth Amendment protects citizens against unreasonable searches or seizures. U.S. Const. amend IV. Whether a traffic stop is an unreasonable seizure in violation of the Fourth Amendment is assessed, like other alleged Fourth Amendment violations, by objectively evaluating the officer's conduct in light of the surrounding circumstances known to the officer. United States

4

v. Ferguson, 8 F.3d 385, 388 (6th Cir. 1993). If "the officer has probable cause[2] to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment." Id. at 391.

Probable cause is "reasonable grounds for belief supported by less than prima facie proof but more than mere suspicion." United States v. Bennett, 905 F.2d 931, 934 (6th Cir. 1990). The Sixth Circuit clearly defines what is necessary to establish probable cause:

> The establishment of probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Illinois v. Gates, 462 U.S. 213, 244 n.13, 103 S. Ct. 2317, 2335 n.13, 76 L. Ed. 2d 527 (1983). As noted in Texas v. Brown, 460 U.S. 730, 742, 103 S. Ct. 1535, 1543, 75 L. Ed. 2d 502 (1983):
>
>> [P]robable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief". . . that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A "practical, nontechnical" probability that incriminating evidence is involved is all that is required. (citations omitted).
>
> Moreover, the existence of probable cause should be determined on the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed .2d 527 (1983). This totality of the circumstances analysis includes a realistic assessment of the situation

---

[2]Case law in this circuit is in conflict as to whether an officer must possess probable cause or only reasonable suspicion in believing that a traffic violation has occurred before stopping the vehicle in question. United States v. Sanford, 476 F.3d 391, 394-95 (6th Cir. 2007); United States v. Blair, 524 F.3d 740, 748 n.2 (6th Cir. 2008). In this case, Defendant argues that a probable cause standard is applicable, whereas the government appears to argue that reasonable suspicion applies. This issue is not determinative of the outcome in this instance. Accordingly, this Court makes no determination as to whether reasonable suspicion or probable cause is the correct standard within this circuit, though the Court will refer generally to a "probable cause" standard.

5

from a law enforcement officer's perspective.

Ferguson, 8 F.3d at 392 (citing to United States v. Barrett, 890 F.2d 855, 861 (6th Cir. 1989)) (citations omitted in original).

In the present case, Defendant argues that Officer Wardlaw lacked the probable cause necessary to stop the Vehicle. Defendant argues that Officer Wardlaw had no objective indication that criminal activity was afoot, because the driver of the Vehicle did not violate any traffic laws. The government argues that probable cause existed, and the stop was proper, because the relevant inquiry is whether the officer possesses reasonable suspicion to believe that a traffic violation occurred, and turning without signaling is a violation of state statutory law.

The government is correct in its assertion that drivers must signal their intent to turn:

> No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in § 55-8-140, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway, unless and until such movement can be made with reasonable safety. No person shall so turn any vehicle without giving an appropriate signal in the manner provided in §§ 55-8-143 and 55-8-144 in the event any other traffic may be affected by such movement.

TENN. CODE ANN. § 55-8-142 (a). Further, "every driver who intends to start, stop or turn, or partly turn from a direct line, shall first see that such movement can be made in safety, and whenever the operation of any other vehicle may be affected by such movement, shall give a signal required in this section. . . ." Id. at § 55-8-143 (a).

Generally, where the police have probable cause to believe that a traffic violation has occurred, a stop of a vehicle is reasonable. Whren v. United States, 517 U.S. 806, 810 (1996). For a traffic stop, the probable cause determination is fact-dependant and turns on what the officer knew at the time of the stop. United States v. Haynes 301 F.3d 669, 678 (6th Cir. 2002) (citing to

6

Ferguson, 8 F.3d at 391-92). Courts may not determine whether probable cause existed by looking at events occurring subsequent to the stop. Ferguson, 8 F.3d at 391. "If an officer testifies at a suppression hearing that he in fact did not see the traffic violation or did not have probable cause to believe a violation had occurred. . . a court could not find that probable cause existed. Such a stop would be unreasonable under the Fourth Amendment." Id.

Tennessee statutes do require the utilization of turn signals. However, such signals are only required "in the event any other traffic may be affected by such movement." TENN. CODE ANN. § 55-8-143 (a). Therefore, for an officer to have probable cause to believe a traffic violation has occurred, the officer must have some indication that other traffic has been affected by the failure to signal.

In a factually similar case, the Tennessee Court of Criminal Appeals held that where the defendant testified no traffic was around his vehicle and the officer testified that he was not affected by Defendant's turn, no violation of the traffic code occurred when the defendant failed to utilize his turn signal. State v. Gonzalez, 52 S.W.3d 90, 99 (Tenn. Crim. App. 2000). Therefore, the officer did not have probable cause to believe a traffic violation occurred and subsequently to seize the vehicle. Id.; see also United States v. Olson, 59 F. Supp. 2d 725, 729 (M.D. Tenn. 1999) (holding that because the defendant did not commit a traffic violation by failing to use his turn signal, the police officer did not have probable cause to stop the defendant's vehicle, and the stop and ensuing search of the vehicle violated the defendant's Fourth Amendment rights); United States v. Mariscal, 285 F.3d 1127, 1131-33 (9th Cir. 2002) (holding that a stop was not reasonable under the Fourth Amendment where the state statute limited turn signal violations to those which affect other vehicles and no other vehicles were present); but see State v. Linsey, No. M2002-01299-CCA-

7

R3-CD, 2004 WL 840080, at *3 (Tenn. Crim. App. Apr. 16, 2004) (unpublished) (holding that a city traffic ordinance, which varied from the state's traffic statutes, provided a basis to validate a stop, which would otherwise have been unconstitutional).

In the present case, the Court finds that Officer Wardlaw's testimony was not impeached and is credible. The Court further finds that the driver of the Vehicle failed to signal when turning left on to Cherry Street. This testimony is uncontroverted. Accordingly, Officer Wardlaw has satisfied the initial requirement for a threshold violation of Tennessee statutory traffic provisions. However, no evidence indicates that any vehicles were affected by the Vehicle's un-signaled turn. Officer Wardlaw testified that the Vehicle's movements "might have impeded someone from pulling out from one of the gas stations on someone that might have been walking on Cherry Street." He then conceded that he could not testify that any cars or pedestrians, in fact, were present or affected by the Vehicle's unsignaled movements. Further, Officer Wardlaw, who was at a stop when the Vehicle turned left, testified that he was not affected by the Vehicle's movements. Accordingly, this Court finds that no vehicles, Officer Wardlaw's or any others, were affected by the Vehicle's turn without a signal. As such, no traffic violation occurred. Therefore, Officer Wardlaw lacked both probable cause and reasonable suspicion to believe that a traffic violation occurred, which would permit a stop. United States v. McDonald, 453 F.3d 958, 962 (7th Cir. 2006) (holding that "[a] stop based on a subjective belief that a law has been broken, when no violation actually occurred, is not objectively reasonable," and does not satisfy probable cause requirements); see also United States v. Tibbetts, 396 F.3d 1132, 1138 (10th Cir. 2005) (holding that a misunderstanding of the law by a police officer is not objectively reasonable); United States v. Chanthasouxat, 342 F.3d 1271, 1279 (11th Cir. 2003) (holding that a mistake of law cannot provide

8

objectively reasonable grounds to support reasonable suspicion or probable cause); United States v. Twilley, 222 F.3d 1092, 1096 (9th Cir. 2000) (holding that a mistake of law cannot constitute the reasonable suspicion required for a constitutional traffic stop); United States v. Miller, 146 F.3d 274, 279 (5th Cir. 1998) (holding that an officer's mistake of law cannot establish probable cause for a stop); but see United States v. Washington, 455 F.3d 824, 827 (8th Cir. 2006) (holding that a mistake of law cannot establish the requisite reasonable suspicion for a traffic stop if the officer's belief was objectively unreasonable).[3]

Officer Wardlaw's stop and seizure of Defendant began when he activated his vehicle's lights. State v. Binette, 33 S.W.3d 215, 218 (Tenn. 2000) (citing State v. Pulley, 863 S.W.2d 29, 30 (Tenn. 1993) (holding that when an officer turns on the blue lights of his vehicle, a stop, for the purposes of the Fourth Amendment, has begun) (relying on United States v. Hensley, 469 U.S. 221, 226 (1985) (holding that a seizure has occurred, within the meaning of the Fourth Amendment, when a police officer stops a car)); see also Gonzalez, 52 S.W.3d at 97; United States v. Mendenhall, 446 U.S. 544, 554 (1980) (holding that a person is seized within the meaning of the Fourth Amendment when, based on a totality of the circumstances, a reasonable person would believe that he or she is not free to leave); and see Brendlin v. California, 551 U.S. ___, 127 S. Ct. 2400, 2406 (2007) (holding that in Fourth Amendment terms, a traffic stop entails the seizure of the vehicle's driver, and any passengers, even though the purpose of the stop is limited and the resulting detention is brief).

---

[3]Presently, the Sixth Circuit has not ruled upon this specific issue. United States v. Westmoreland, 224 Fed. Appx. 470, 475 (6th Cir. 2007) (declining to rule on whether an officer's good faith but incorrect belief that an action constituted a traffic violation could allow for a constitutional traffic stop, and noting that other circuits have ruled upon this issue).

9

As the Court found above, the stop lacked either probable cause or reasonable suspicion. Therefore, all evidence gathered subsequent to the illegal stop must be suppressed because "if the initial traffic stop is illegal . . . the seized items must be excluded under the 'fruits of the poisonous tree doctrine.'" United States v. Hill, 195 F.3d 258, 264 (6th Cir. 1999) (citing Wong Sun v. United States, 371 U.S. 471, 484 (1963)).

## IV. CONCLUSION

After thorough consideration of the entire record, the Court finds that the traffic stop was not lawful. For the reasons set forth herein, it is **RECOMMENDED** that Defendant's Motion To Suppress [Doc. 15] be **GRANTED**.[4]

Respectfully submitted,

    s/ H. Bruce Guyton
United States Magistrate Judge

---

[4]Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the ten-day time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).