UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:08-cr-52 |
| | ) | (Phillips/Guyton) |
| **RICKY VEGAS BIAS,** | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

On September 17, 2008, the Honorable H. Bruce Guyton, United States Magistrate Judge, filed a ten-page report and recommendation ("R&R") [Doc. 23] in which he recommended that defendant Ricky Vega Bias's Motion to Suppress Evidence [Doc. 15] be granted.

This matter is presently before the court on the government's timely objections to the R&R [Doc. 24] and defendant's response thereto [Doc. 25]. As required by 28 U.S.C. § 636(b)(1) and Federal Rule of Criminal Procedure 59(b)(3), the court has undertaken a *de novo* review of those portions of the R&R to which the government objects. For the reasons that follow, the government's objections are **OVERRULED** and the R&R is **ACCEPTED IN WHOLE**, whereby defendant's Motion to Suppress Evidence [Doc. 15] is **GRANTED**.

**I.**

On February 13, 2008, at approximately 3:00 p.m., Officer Brandon Wardlaw came upon the vehicle that is the subject of this opinion ("the vehicle"), in which defendant was a passenger. Officer Wardlaw approached the vehicle from behind as it was stopped at a stop sign at the

-1-

intersection of Mitchell Avenue and Cherry Street. Mitchell Street[1] runs perpendicular to Cherry Street and reaches a "dead end" at the intersection. There are numerous businesses around the intersection of Mitchell and Cherry Streets, including at least two gas stations and a restaurant.

Officer Wardlaw observed the vehicle wait on a car going north on Cherry Street to pass, then turn left onto Cherry Street without using a turn signal. Officer Wardlaw likewise turned left onto Cherry Street and, as soon as it was safe to do so, effectuated a traffic stop on Cherry Street for failing to signal a turn.

An evidentiary hearing was held on August 29, 2008, at which Officer Wardlaw gave the sole testimony on behalf of the government. Officer Wardlaw testified that although he could not remember any particular cars that were waiting to turn from the parking lots of the gas stations, he was concerned that with the common volume of traffic and the amount of people present at the gas stations, the driver's failure to signal may have impeded one of the vehicles or otherwise obstructed a pedestrian. Defendant did not present evidence.

After further briefing by the parties, Judge Guyton issued an R&R in which he recommended that defendant's motion to suppress be granted. The government has timely objected, and the defendant responded in opposition to the government's objections.

**II.**

With regard to the standard of cause necessary to effectuate the traffic stop, the government argues that "the relevant inquiry in evaluating the validity of the misdemeanor traffic stop is whether the police officer possessed reasonable suspicion to believe that a traffic violation in fact occurred."

---

[1] A map of "Mitchell Avenue" demonstrates that at varying points, it is called "Mitchell Street" or "Mitchell Avenue Northeast," and in the filings regarding defendant's Motion to Suppress Evidence it has been referred to as both "Mitchell Avenue" and "Mitchell Street." http://maps.google.com (search "Mitchell Street, Knoxville, TN"). For consistency with the R&R, the court will refer to it as "Mitchell Street."

[Doc. 24 at 4]. The defendant has argued under a probable cause standard.

As Judge Guyton identified, there is considerable conflict in the Sixth Circuit as to the legal standard of cause governing traffic stops, namely, whether an officer may conduct a traffic stop on mere reasonable suspicion or whether he must meet the higher standard of probable cause. The Sixth Circuit has articulated the current standards and conflict as follows:

> Police may make an investigative stop of a vehicle when they have reasonable suspicion of an ongoing crime, whether it be a felony or misdemeanor.... Next, police may make a stop when they have probable cause to believe a *civil* traffic violation has occurred, even if the defendant raises a claim that the stop was pretextual. Whether they may also stop a vehicle based on mere reasonable suspicion of a traffic violation is the subject of another conflict in our case law.

*United States v. Sanford*, 476 F.3d 391, 394 (6th Cir. 2007) (emphasis added) (quoting *Gaddis v. Redford Twp.*, 364 F.3d 763, 771 n.6 (6th Cir. 2004)). Applying this standard in *Sanford*, the Sixth Circuit contemplated that the reasonable suspicion standard "should" govern, as the cited offense was a misdemeanor traffic offense. *Id.* at 395. The court did not, however, affirmatively so conclude, and indeed declined to resolve the conflict, as the officer met both standards of reasonable suspicion and probable cause. *Id.* In a more recent case, the Sixth Circuit again identified the conflict while declining to resolve it. *See United States v. Blair*, 524 F.3d 740, 748 n.2 (6th Cir. 2008).

Under *Sanford*, it would appear that the reasonable suspicion standard governs the instant case, as the cited traffic offense was a misdemeanor traffic offense. Tenn. Code Ann. § 55-8-103 (2008) ("It is unlawful and, unless otherwise declared in this chapter and chapter 10, parts 1-5 of this title with respect to particular offenses, *it is a Class C misdemeanor*, for any person to do any act forbidden or fail to perform any act required in this chapter and chapter 10 of this title." (emphasis added)); *Sanford*, 476 F.3d at 395. The court need not, however, attempt to resolve the conflict that the Sixth Circuit has declined to resolve. Because Officer Wardlaw possessed neither reasonable

-3-

suspicion nor probable cause that a traffic violation had occurred, the governing standard is of no import in the instant case.

**III.**

The government further objects to Judge Guyton's conclusion that no other traffic was affected by the driver's failure to signal, and he therefore lacked the requisite cause to effectuate the traffic stop.

Tennessee law provides,

> No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in § 55-8-140, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway, unless and until such movement can be made with reasonable safety. *No person shall so turn any vehicle without giving an appropriate signal in the manner provided in §§ 55-8-143 and 55-8-144 in the event any other traffic may be affected by such movement.*

Tenn. Code Ann. § 55-8-142(a) (2008) (emphasis added). Section 55-8-143(a) in turn provides,

> Every driver who intends to start, stop or turn, or partly turn from a direct line, shall first see that such movement can be made in safety, and *whenever the operation of any other vehicle may be affected by such movement, shall give a signal* required in this section, plainly visible to the driver of such other vehicle of the intention to make such movement.

*Id.* § 55-8-143(a) (emphasis added).

The government contends that it need not demonstrate that other traffic was *actually* affected. Rather, claims the government, the proper focus is on whether other traffic *may* have been affected. This court agrees with the government insofar as the relevant inquiry is not actual proof that individual drivers were in fact affected by the failure to signal. Clearly such a standard would prove unworkable: to effectuate any proper stop an officer would have to pull over every driver in the vicinity to inquire as to whether the failure to turn actually affected them. As such, the word "may" operates to reduce the standard below proof that vehicles were actually affected. Nevertheless, the court does not agree with the government's contention that merely being in a

-4-

commonly "high traffic area during a high traffic time of day" satisfies the statutory requirement. Such an interpretation would tend to render meaningless the word "affected." Rather, the government must demonstrate that other drivers were present on the road or attempting to enter the road, not simply that there were people and vehicles in parking lots in the general vicinity.

As noted by Judge Guyton, the Tennessee Court of Criminal Appeals has previously interpreted the statute in this manner. In *State v. Gonzales*, a police officer followed a vehicle and effectuated a traffic stop for failing to signal when the vehicle turned right. *State v. Gonzales*, 52 S.W.3d 90, 93 (Tenn. Crim. App. 2000). The driver "testified that there was no traffic directly behind or around his vehicle. He further testified that the officer's vehicle would not have been affected by the turn. [The police officer] also testified that he was not affected by [the driver's] turn." *Id.* at 99. Under these facts, the court determined that

> [b]ecause no other vehicles could have been affected by [the driver's] movement, [the driver] did not violate any provision of the traffic code by failing to give a signal. It follows that [the police officer], by reason of his observations, did not have probable cause to believe that a traffic violation had occurred. Therefore, [the police officer] did not have probable cause to seize the Defendant ....

*Id.*

The facts in the instant case are almost identical to the facts in *Gonzales*. Here, Officer Wardlaw conceded that he could not recall any other vehicles being on the roadway. Specifically, he affirmed that when the vehicle turned, "there was no other traffic right there at that intersection on Cherry." [Tr. at 17]. Nor could Officer Wardlaw recall any cars attempting to exit the gas station in the vicinity of his and the defendant's vehicles—the only vehicle he could recall pulled out of the gas station behind the officer's cruiser. [*Id.* at 8-9, 15]. Further, another car did not approach until the vehicle and Officer Wardlaw's cruiser were already safely on Cherry Street. [*Id.* at 19]. Tellingly, if Officer Wardlaw, who was behind the vehicle, was able to safely turn onto Cherry

Street immediately behind the vehicle, [*id.* at 19, 21], any traffic which may later have approached the two vehicles on Cherry Street was not in a vicinity to have been "affected" by the driver's failure to signal. As there was "no traffic directly behind or around [the] vehicle," *Gonzales*, 52 S.W.3d at 99, there was no probable cause or even reasonable suspicion to believe that a traffic violation had occurred. Even under the government's proposed standard of demonstrating that the failure to turn would have the "potential" for affecting other traffic, no other traffic was around to be potentially affected. Officer Wardlaw's seizure of defendant was therefore illegal, and all evidence obtained from the subsequent search of the vehicle must therefore be suppressed.

The government cites *State v. Cox* in support of its argument that Tennessee "has rejected the argument that a violation of the statute requires proof traffic was actually affected by the failure to give a turn signal" and that it must simply demonstrate that a vehicle "could have" been affected by the failure to turn. [Doc. 24 at 6 (emphasis removed)]. In that case, however, the Tennessee Supreme Court did not rule on the statute in question, as the defendant had failed to preserve the issue of the validity of the traffic stop for appeal. *State v. Cox*, 171 S.W.3d 174, 181-82 (Tenn. 2005). The court merely noted in passing that "[t]he testimony at the suppression hearing indicated that there was an oncoming car that could have been affected by [the] turn." *Id.* at 181 n.7. This observation is not irreconcilable with the court's ruling in *Gonzales*, and indeed tends to support the holding in *Gonzales*. The oncoming car in *Cox*, being traffic around the vehicle, could have been affected by a failure to signal a turn. The distinction in the present case is that here, there was no traffic in the vicinity. At best the government has proven a mere possibility that other vehicles were present at the businesses surrounding the intersection. Whether they were parked or moving into the roadway is a matter of sheer conjecture and does not demonstrate that any vehicle could have

been affected by the driver's failure to signal.

Accordingly, the court finds that the government has failed to establish that Officer Wardlaw possessed either reasonable suspicion or probable cause such that a traffic stop could be validly effectuated.

### IV.

For the foregoing reasons, the government's objections [Doc. 24] are **OVERRULED**. The R&R is **ACCEPTED IN WHOLE**, which the court adopts and incorporates into this ruling, whereby defendant's Motion to Suppress Evidence [Doc. 15] is **GRANTED**. Accordingly any evidence seized after the illegal stop and detention of the defendant is suppressed.

**IT IS SO ORDERED**.

**ENTER:**

s/ Thomas W. Phillips
United States District Judge